**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| IN RE: HUEL HEAVY METAL LITIGATION | MDL NO. _____ |
|---|---|

**MEMORANDUM IN SUPPORT OF PLAINTIFF SYLVIA SETTECASI'S MOTION
FOR TRANSFER AND CONSOLIDATION OF ACTIONS PURSUANT TO
28 U.S.C. § 1407 TO THE EASTERN DISTRICT OF NEW YORK**

Pursuant to 28 U.S.C. § 1407 and Judicial Panel on Multidistrict Litigation ("JPML") Rule 6.2, Plaintiff Sylvia Settecasi, individually and on behalf of all others similarly situated ("Plaintiffs"), respectfully submits this memorandum in support of the motion for an Order from the Panel transferring and consolidating the currently-filed cases listed in the attached Schedule of Actions (collectively, "the Actions") as well as any cases subsequently filed involving similar facts or claims ("tag-along cases"):

### I.  INTRODUCTION

At present, there are five active Class Actions pending between the Southern and Eastern District of New York, the Northern District of California and the Southern District of Florida that contain nearly identical allegations. These Actions are in front of no fewer than four federal judges in four different districts currently presiding over proposed class action cases against Defendant Huel Inc.[1] ("Huel"), that all involve the same products and the same Defendant's actions and omissions. Namely, the central claims in each Action allege that Huel's deceptive and misleading business practices with respect to the manufacturing, marketing and sale of Defendant's Huel

---

[1] In the matter pending in the Northern District of California, "Huel, Ltd." – rather than Huel Inc. – is the named defendant. For purposes of this application, Huel or Defendant shall refer to one and the same.

Black Edition protein powder products ("Products") throughout the United States, mislead reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products are contaminated with unsafe levels of heavy metals like lead and cadmium, which are powerful neurotoxin that is known to cause cognitive deficits, mental illness, dementia, and hypertension. Furthermore, the Actions allege that Defendant omitted and did not disclose on its packaging and labels that the Products contain, or are at the risk of containing, lead and cadmium. Upon information and belief, both independent and third-party testing by consumer groups demonstrate that the Products are contaminated with heavy metals like lead and cadmium. None of these cases have entered into discovery, and all are in the nascent stages of litigation. Moreover, the proposed classes for each of the proposed class actions all overlap, and the allegations in each of the eight class cases currently pending are nearly identical.

As such, this is precisely the kind of situation Section 1407 was designed for. Absent transfer and consolidation, there would be an enormous amount of unnecessary duplication and a needless diversion of judicial resources. Absent transfer and consolidation, there is also a substantial risk of inconsistent and conflicting rulings on critical issues, including but not limited to federal preemption, as well as class certification. For these reasons and for the reasons set forth more fully below, transfer and consolidation are fully warranted here.

## II.    BACKGROUND AND STATUS OF LITIGATION

### A.    The Pending Cases

There are at least five proposed class actions pending against Defendant in no fewer than four federal district courts, bringing breach of express and implied warranty, false advertisement, and unjust enrichment claims relating to Defendant's actions and omissions, as well as violations

to state consumer protection law. As detailed in the Schedule of Actions, the pending proposed class cases are as follows:

1. *Riley v. Huel Inc.,* Case No. 1:25-cv-05783 (EDNY filed October 15, 2025) ("*Riley*") (*see Riley* Docket Report and Compl., Exs. 1 & 2).

2. *Sarayli et al. v. Huel Ltd.,* Case No. 5:25-cv-08878 (NDCA filed October 16, 2025) ("*Sarayli*") (*see Sarayli* Docket Report and Compl., Exs. 3 & 4).

3. *Gouldbourne v. Huel Inc.,* Case No. 1:25-cv-08921 (SDNY filed October 28, 2025) ("*Gouldbourne*") (*see Gouldbourne* Docket Report and Compl., Exs. 5 & 6).

4. *Tal et al. v. Huel Inc. 1:25-cv-06508* (EDNY filed November 24, 2025) ("*Tal*") (*see Tal* Docket Report and Compl. Exs. 7 & 8).

5. *Settecasi v. Huel Inc.,* Case No. 0:25-cv-62507 (SDFL filed December 5, 2025)("*Settecasi*")(*see Settecasi* Docket Report and Compl. Exs. 9 and 10).

*See* Schedule of Actions.[2]

The Actions are based upon the same allegations: namely, that Huel manufactured, marketed and sold their protein powder products improperly, deceptively and misleadingly by allegedly:[3] (1) labeling and marketing its Products to reasonable consumers and omitting and not disclosing on its packaging that the Products contain, or are at the risk of containing heavy metals, like lead and cadmium; (2) omitting from its packaging and marketing that the Products at issue may contain, or are at the risk of containing, lead and cadmium; (3) knowing about the presence and/or risk of presence of lead and cadmium in their Products; (4) omitting any warning that the Products contain, or are at the risk of containing, heavy metals making the Products unsafe and unfit for human consumption; (5) having a false, deceptive and misleading advertising and

---

[2] Several other cases had previously been filed, including three that others in the Eastern District of New York that are now closed, having been consolidated into *Riley*. Additionally, an action was filed in the United States District Court of Illinois but voluntarily dismissed. *Albright v. HUEL, Inc.*, Case No. 3:25-cv-01972 (SDIL filed October 27, 2025).

[3] The Products at issue in each of the pending cases are also the same, Huel's Black edition protein powder line of products.

3

marketing campaign because the Products at issue were unsafe for human use, and were therefore worthless; and (6) independent and third-party testing by consumer groups demonstrate that the Products are contaminated with heavy metals, like lead and cadmium. *See*, e.g., *Riley* Compl., Ex. 2, ¶¶ 1-25; *Sarayli* Compl., Ex. 4, ¶¶ 16-46;; *Gouldbourne* Compl., Ex. 6, ¶¶ 1-32; *Tal* Compl. Ex. 8, ¶¶ 1, 13-44; *Settecasi* Compl., Ex.10, ¶¶ 1-32.

In each of the Actions, the plaintiffs seek certification of nationwide classes of all consumers who purchased the Products anywhere in the United States during the class period. Likewise, all five Actions also seek certification of overlapping state classes for purchasers who purchased any of the Products withing the applicable stature of limitations. *See*, e.g., *Riley* Compl., Ex. 2, ¶ 138 (seeking certification of a nationwide class and a California subclass of individuals who purchased the Products within the relevant limitations period for household use, and not for resale); *Sarayli* Compl., Ex. 4, ¶ 47 (seeking certification of California and Florida class of all consumer who purchased the Products withing four years prior to the filing of the complaint);; *Gouldbourne* Compl., Ex. 6, ¶¶ 74-75 (seeking certification of a nationwide class and a New York subclass of all persons who purchased the Products subject to the recall announced on November 11, 2025);; *Tal* Compl. Ex. 8, ¶ 50 (seeking certification of a nationwide class and a California, New York and Illinois subclass of all persons who purchased the Products withing the applicable limitations period); *Settecasi* Compl., Ex. 10, ¶¶ 74-75 (seeking certification of a nationwide class and a Florida subclass of all persons during the Class Period).

### B.    Status of the Pending Cases

All of the Actions are in the beginning stages of litigation. Indeed, all five of the currently operative Complaints have been filed within the last three months. *See Riley* Docket Report, Ex. 1; *Sarayli* Docket Report, Ex. 3; *Gouldbourne* Docket Report, Ex. 5; *Tal* Docket Report, Ex. 7;

*Settecasi* Docket Report, Ex. 9. To date, none of the Courts in the Actions have taken substantive action relating to the underlying litigation. As such, discovery has not begun in any of these recently filed actions. Further, Defendant has not yet filed an answer to any of the operative Complaints. *Id*.

### III. DISCUSSION

Each of the requirements for transfer and consolidation under Section 1407 are satisfied here. *See* Motion infra at 5-13.

#### A. These Cases Meet the Standard for Transfer and Consolidation Under 28 U.S.C. § 1407

The Actions pending against Defendant in four different jurisdictions present precisely the sort of situation for which 28 U.S.C. § 1407 was enacted and thus plainly meet the standards for transfer and consolidation articulated by this Panel. *See*, e.g., *In re Food Fair,* 465 F. Supp. 1301, 1304-05 (J.P.M.L. 1979); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 490-92 (J.P.M.L. 1968).[4] Given the very similar and in many instances identical allegations in each of the Actions, the threshold requirement that the actions involve common issues of fact is easily met. *See* 28 U.S.C. § 1407; Motion at 3-6; Compare also *Riley* Compl., Ex. 2, *Sarayli* Compl., Ex. 4, *Gouldbourne* Compl., Ex. 6, *Tal* Compl. Ex. 8, *Settecasi* Compl. Ex. 10, generally. Moreover, there

---

[4] As the Panel has repeatedly emphasized, transfer and consolidation are appropriate when actions pending in different judicial districts involve similar questions of fact such that consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, 28 U.S.C. § 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*Id*.; see also, e.g., *In re Nifedipine*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

are several other benefits to transfer and consolidation, including the fact that it would promote efficiency, minimize the potential for duplicative discovery, minimize the likelihood of inconsistent pretrial decisions (including inconsistent class decisions) and increase the possibility of achieving coordination between the federal courts and any state courts that later become involved. *See* Motion infra at 11-12.

### 1. There Are Numerous Overlapping Actions Containing Nearly Identical Claims And Factual Allegations

As noted above, Defendant is currently defending five proposed class actions in four different jurisdictions in which relief is sought for identical classes based upon nearly identical factual allegations. *See supra* at 3-5. This alone is sufficient to warrant transfer and consolidation. *See*, e.g., *In re HSBC Bank*, 949 F. Supp. 2d 1358 (J.P.M.L. 2013) (consolidating three class actions); *In re Foot Locker*, 787 F. Supp. 2d 1364, 1366 (J.P.M.L. 2011) (transferring and consolidating four class actions); *In re VA Data Theft*, 461 F. Supp. 2d 1367, 1369 (J.P.M.L. 2006) (transferring and consolidating three class actions); see also *In re Plumbing Fixture*s, 308 F. Supp. 242, 244 (J.P.M.L. 1970) ("Such a potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts.").

Common questions of law and fact exist in each of the Actions. Each Action alleges that Defendant's actions and omissions are generally applicable to all classes. The common factual and legal questions before the courts in the Actions include, *inter alia*: (1) whether the Products' misrepresentations were misleading; (2) whether the Products are defectively designed and/or manufactured; (3) whether Defendant knew or should have known about the Defect in its Products before or after distributing and selling them to Plaintiff and Class Members; (4) whether

6

Defendant's conduct violated federal or state consumer protection statutes; (5) whether Defendant's misconduct demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products; (6) whether Defendant's testing showed that its products contained Heavy Metal; (7) whether the Products contain or are at risk of containing unsafe levels of lead or cadmium; (8) whether Defendant knew or should have known the Products contained or risked containing elevated levels of heavy metals, including arsenic, cadmium, and/or lead; (9) whether Defendant had a duty to disclose; (10) whether Defendant engaged in unfair and deceptive acts, in violation of state consumer protection laws; (11) whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; (12) whether Defendant had knowledge that those representations were false, deceptive, and/or misleading; (13) whether Defendant's alleged actions and omissions caused injury to Plaintiffs and the Class members by causing them to pay premium prices for the Products during the Class Period; and (14) the appropriate measure of damages; and the propriety of declaratory and injunctive relief. *See*, *Riley* Compl., Ex. 2 ¶ 146, *Sarayli* Compl., Ex. 4 ¶ 52, *Gouldbourne* Compl., Ex. 6 ¶ 79, *Tal* Compl. Ex. 8 ¶ 139, *Settecasi* Compl., Ex. 10 ¶ 79. Given the commonality of factual issues in each of the related cases, MDL treatment is appropriate. *See* e.g., *In re Fosamax Prods*. Liab. Litig., 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006).

### 2. Transfer and Consolidation Would Promote Efficiency and Minimize the Potential for Duplicative Discovery

Transfer and consolidation of these actions would promote efficiency and minimize the potential for duplicative discovery. *See*, e.g., *In re Skelaxin* (Metaxalone), 856 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012). As discussed above, each of the Actions are based upon allegations that Defendant manufactured, marketed and sold their protein powder products improperly, deceptively

7

and misleadingly. *See* Motion *supra* at 3-4. The Panel has consistently held that transfer under Section 1407 is intended to prevent such duplication. *See*, e.g., *In re Starmed Health Pers. FLSA Litig.*, 317 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) (consolidating two actions in part because transfer was necessary to "eliminate duplicative discovery" and "conserve the resources of the parties"). The appropriate scope of federal and state consumer protection laws will undoubtedly be a threshold question that can best be decided by one federal judge instead of four or more. *See In re Acetaminophen – ASD/ADHD Prods. Liability Litig.*, 2022 WL 5409345, * 2 (J.P.M.L. 2022) ("A single MDL is the most appropriate vehicle for resolving defendants' common defenses concerning preemption and general causation"). Moreover, Plaintiffs in each of these Actions are likely to seek discovery regarding, among other things, the testing performed on the Products, as well as Huel's advertising and labeling practices, communications and documents regarding the Products advertisement and marketing as well as Defendant's manufacturing and good manufacturing practices. *See In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 201 F. Supp. 3d 1375, 1378 (J.P.M.L. 2016) (noting that transfer and consolidation were appropriate to handle overlapping discovery when the actions shared a common factual core); *In re Marriott Int'l, Inc.,* ("consolidation appropriate in order to minimize duplicative discovery regarding allegations relating to data security breach, even when class case also posed "unique factual issues"). *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 228 F. Supp. 2d 1379, 1380–81 (J.P.M.L. 2002) ("Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve the resources of the parties, their counsel and the judiciary.")

In addition, these Actions are likely to involve complicated good manufacturing standards and Defendant's testing and sourcing of its Products, resulting in complex expert reports and likely *Daubert* hearings, all of which would be more efficiently handled in a consolidated proceeding. *See, e.g., In re Natrol, Inc. Glucosamine/Chondroitin*, 26 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014). Furthermore, the Actions seek the same relief, meaning that discovery in the cases will necessarily overlap, involving many of the same documentary evidence. Similarly, plaintiffs in each of the cases are likely to seek to depose many of the very same witnesses. *See, e.g., In re Auto Body Shop,* 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) (transfer before a single judge was beneficial, because the judge could "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands"); *In re Enfamil Lipil*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses.").

Given the similarity of the Actions, the overlapping legal issues and the potential for duplicative discovery, transfer and consolidation would inevitably conserve the resources of the parties. *See, e.g., In re Air Crash at Dallas/Fort Worth Airport,* 623 F. Supp. 634, 635 (J.P.M.L. 1985). It would also conserve the resources of the judiciary, as it would assign responsibility for overseeing threshold legal determinations and a pretrial plan (if necessary) to one judge as opposed to four or more different federal judges. *See, e.g., In re Pineapple*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004); *In re Advanced Inv. Mgmt*., 254 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003). And while proceeding in separate actions would be burdensome to both Plaintiffs and Defendant, both parties would suffer no prejudice as the result of transfer and consolidation. All of the cases are in the early stages, and discovery has not commenced in any of them. *See id*. A coordinated

discovery schedule would therefore benefit all parties. *See In re Advanced Inv. Mgmt.*, 254 F. Supp. 2d at 1379.

### 3. Transfer and Consolidation Would Minimize the Risk of Inconsistent Pretrial Decisions, Including Inconsistent Class Certification Decisions

There can be no legitimate dispute that the fact that there are five different actions containing similar allegations and asserting similar causes of actions pending before four different federal judges materially increases the likelihood that there will be inconsistent pretrial decisions, ranging from inconsistent decisions on preemption to inconsistent discovery rulings as well as decisions on class certification. *See In re AZEK Bldg. Prods*., 999 F. Supp. 2d 1366, 1368 (J.P.M.L. 2014); *In re Natrol,* 26 F. Supp. 3d at 1393.

As the Panel has recognized, "[c]entralization will enable the transferee judge to make consistent rulings on such discovery disputes from a global vantage point" and will otherwise prevent inconsistent pretrial rulings on common factual issues. *See In re Yamaha*, 597 F. Supp. 2d 1377, 1378 (J.P.M.L. 2009); see also *In re Dow Chem*., 650 F. Supp. 187, 188 (J.P.M.L. 1986). In addition, and perhaps most critically, it will prevent inconsistent pretrial rulings with respect to preemption and class certification. *See*, e.g., *In re H&R Block*, 435 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006) ("The three actions contain competing class allegations and involve facts of sufficient intricacy that could spawn challenging procedural questions and pose the risk of inconsistent and/or conflicting judgments."). Indeed, the Panel has long recognized that preventing inconsistent class decisions "presents one of the strongest reasons for" transfer and consolidation:

> [T]here are at least three other actions with class action claims which are in potential conflict with the claims asserted by these plaintiffs. Such a potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts.

*In re Plumbing Fixtures*, 308 F. Supp. 242, 243-44 (J.P.M.L. 1970); see also *In re Sugar Industry*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determination exists."). Given that there are currently seven proposed class actions with overlapping proposed classes pending before five different judges, the risk of inconsistent class decisions is, however, particularly sharp in this instance. *See id*.

**B. Plaintiff Sylvia Settecasi Proposes Consolidation in the Eastern District of New York**

Once the Panel determines that centralization is appropriate it then "looks for an available and convenient transfer forum." Manual for Complex Litig. § 22.33, at 367 (4th Ed. 2011). The Panel balances a number of factors in determining the transferee forum, including: the experience, skill, and caseloads of the available judges; the number of cases pending in the jurisdiction; the convenience of the parties; the location of the witnesses and evidence; whether the district is in an accessible metropolitan location; and the minimization of cost and inconvenience to the parties. *See In re Jamster Marketing Litigation*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006); *In re Preferential Drug Products Pricing Antitrust Litigation*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977).

At present, two of the proposed class cases pending against Defendant, including the first-filed case of the Actions, are assigned to Judge Donnelly in the United States District Court for the Eastern District of New York (*Riley* and *Tal*), where the Court has already issued a consolidation order leading to the closure of three other matters. *See* Schedule of Actions and *supra* fn. 2. The are three additional pending Actions, one filed in the Southern District of New York (*Gouldbourne*), one in the Northern District of California (*Sarayli*), and one in the Southern District of Florida (*Settecasi*). *Id*. Additionally, Huel's headquarters and principal place of business are in Brooklyn, New York, located within the Eastern District of New York. As such, transfer to

11

and consolidation in the Eastern District of New York would certainly be appropriate since it provides a central location with a courthouse near a major airport providing for ease of travel from each other location.

Thus, Plaintiff Settecasi respectfully propose that the cases be transferred to Judge Ann M. Donnelly who is presiding over *Riley* and *Tal* in the Eastern District of New York. Judge Donnelly is an experienced judge with substantial class action experience. The Eastern District of New York also allows for easy access for all litigants and witnesses. The Panel has transferred and consolidated cases before the Eastern District of New York when an action was already pending there, and has ample resources to handle this matter. *See e.g.*, *In re: Payment Card Interchange Fee & Merc. Disc. Antitrust Litig.*, 2024 U.S. Distr. LEXIS 120451, MDL No. 1720 (J.P.M.L. June 5, 2024); *In re: Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.* 717 F. Supp. 3d 1357 (J.P.M.L. Jan. 30, 2024); *In re: Exactech Polyethylene Orthopedic Prods. Liab. Litig*, 637 F. Supp. 3d 1381 (J.P.M.L. 2022) (noting the Eastern District of New York "is a relatively underutilized transferee district"). The District provides an ideal forum for consolidation because New York City is a major metropolitan area easily accessible to parties, witnesses, and counsel across the country. *See*, e.g., *In re Wireless Telephone Fed. Cost Recovery Fees Litig.*, 293 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003).

The JPML has vast discretion and as discussed above, the JPML is tasked with looking "for an available and convenient transfer forum." Manual for Complex Litig. § 22.33, at 367 (4th Ed. 2011). Indeed, the consolidation in the Eastern District of New York would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. The Eastern District of New York serves as the most accessible jurisdiction and Judge Donnelly there is experienced, able, and prepared to handle, organize and schedule the pre-trial proceedings in the pending Actions.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully requests that the Panel issue an Order transferring the actions listed on the Schedule of Actions to the United States District Court for the Eastern District of New York for consolidated pretrial proceedings.

Dated: December 22, 2025

**LEEDS BROWN LAW, P.C.**

 /s/  Brett R. Cohen
Brett R. Cohen (SBN 1033391)
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel : (516) 873-9550
bcohen@leedsbrownlaw.com

*Counsel for Plaintiff Settecasi*